De Vries, Respondent, vs. Kelly and another, imp., Appellants.

*September 16, 1932—February 7, 1933.*

For the appellants there was a brief by *Thorson & Seymour* of Elkhorn, and oral argument by *A. T. Thorson.*

For the respondent there was a brief by *Lowry & Beggs* of Madison, and oral argument by *H. J. Lowry.*

The following opinion was filed October 11, 1932:

WICKHEM, J. The first question involved is, Did the testator intend to give twelve acres, being mistaken as to how large a government quarter-quarter-quarter was, or did he intend to give the quarter-quarter-quarter without regard to its size or acreage? It is obvious that he could not give twelve acres of land in a ten-acre tract, but if the will indicates that it was his paramount intention to give twelve acres, that intention should govern. In support of his contention that the description of the land in terms of a government survey takes precedence over the quantity of land described in the devise, defendant relies particularly upon the case of *McEvoy v. Loyd,* 31 Wis. 142. In that case the deed conveyed the east half of the northwest quarter of the northwest quarter of section 5, "containing twenty acres, according to the government survey." It was later discovered that the land as thus described contained more than twenty acres, and the grantor claimed the overrun upon the theory that the acreage was the controlling portion of the description. This court, however, held that the "government description and monuments established by the surveys are to be regarded, rather than the number of acres which are mentioned in the deed." Reliance is also had upon *Kruse v. Scripps,* 11 Ill. 98, where a quarter-section was conveyed but stated to consist of sixty-one acres. The court held that "if the statement of quantity is inconsistent with the other parts of the descrip-

tion, it must be disregarded." It is our conclusion that the doctrine of these cases is not controlling. In each the sole guide to the intention of the grantor was the rule of construction which gives precedence to monuments and other forms of precise description over statements of quantity.

In this case the will, together with the extrinsic evidence, furnishes sufficient data for interpreting this ambiguous description and ascertaining the intention of the testator. The thing given is "twelve acres" in the government subdivision, not the government subdivision, described as containing twelve acres. The term "twelve acres" is used twice in the will,—once as a part of the description under examination here, and once in the course of granting a right of way to the devisee, indicating that testator had in mind a twelve-acre tract. In dealing with the right of way the reference is to "the above described twelve acres where the water is located." The evidence in the case establishes that the only water to which this clause can refer lies east of the eastern boundary of the ten-acre government subdivision, it evidently being the testator's intention to give to the devisee of this tract access to the water on the twelve-acre tract from the four acres in section 2, also devised to him. It is significant that the will thereafter devises "to my two sons, Geo. W. and Henry P. Brown, *the remainder* of the northeast quarter of the northwest quarter of said section 11." The devise of *the remainder* of the quarter-quarter is at least consistent with an intention to give to Joseph more than the ten acres contained in the government subdivision.

Hence it is our conclusion that the provision of the will, especially when read in the light of extrinsic evidence establishing the location of the water, indicates that it was the testator's intention to give twelve acres, which in general were situated in the southwest quarter of the northeast quarter of the northwest quarter of section 11. The next difficulty is to locate or lay out the twelve acres thus given.

In his original judgment the trial court laid out the twelve acres in the shape of an oblong, upon the theory that since the twelve acres included the water, a line should be run east from the southwest corner of the quarter-quarter-quarter until the water was reached, and then should be run north a sufficient distance to conform to the limitation as to acreage. We think this conclusion was correct. The land as thus laid out satisfies the twelve-acre requirement in the will, includes within the twelve acres the water referred to by the will, and places the north boundary of the tract at a spot that would require the right of way given to pass over the two pieces of land devised to George W. and Henry P. Brown. This conclusion fully satisfies the requirements of the will. On the other hand, the perfect square provided for in the final judgment excludes the water from the twelve acres, and makes it unnecessary that the right of way described in the will pass over both of the two pieces devised to George W. and Henry P. Brown.

The next contention of the defendants is that the court should have found that defendants and their predecessors in title occupied the disputed strip east of the government subdivision for a sufficient length of time to bar plaintiff of any claim. In so far as defendants' claim is based on the twenty-year statute, the evidence sustains the finding that it was permissive in character. In so far as the claim is made of adverse possession under color of title for ten years, an examination of the conveyances under which defendants hold indicates that all of them up to 1923 exclude the twelve acres as described in the will. Hence there is no basis for the contention upon either ground.

The contention that there was long-continued acquiescence in the east boundary of the government subdivision as the boundary of plaintiff's land, and that this is entitled to great weight, is without merit. Here the question is as to the interpretation of the will, and acquiescence in boundaries by

devisees under the will furnishes little or no assistance in that direction. It might be otherwise if a deed, mortgage, or other instrument evidencing a mutual intent were under examination.

It follows that the judgment appealed from is erroneous in so far as it quiets plaintiff's title to a tract in the form of a perfect square, and that it must be modified to conform to this opinion and to the first conclusion of the trial court.

*By the Court.*—Judgment is ordered modified to conform to this opinion, and as so modified is affirmed; neither party to recover costs in this court.

A motion for a rehearing was denied, with $25 costs, on February 7, 1933.